IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| NATIONAL LEAGUE OF POSTMASTERS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 1:05cv1429 ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT | ) ) ) |
| Defendant. | ) ) |

### **M E M O R A N D U M  O P I N I O N**

This matter comes before the Court on Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

### **I. Background**

Plaintiff, National League of Postmasters, is an independent professional membership association that sponsors the PBP Health Plan, a comprehensive health plan available to all federal and postal employees. Plaintiff is currently a participant in the Federal Employees Health Benefits Program ("FEHBP"). The United States Office of Personnel Management ("OPM"), the Defendant in this action, administers the FEHBP.

Earlier this year, the PBP Health Plan began to experience financial difficulties and performance problems.[1]

---

[1] Medicure Plus, the administrator of the PBP Plan, had previously pledged $10 million to cover the Plan's liabilities in the event the Plan became insolvent.

Nevertheless, OPM entered into negotiations with the PBP Plan regarding its 2006 participation in the FEHBP. After the PBP Plan and OPM agreed upon rates for 2006, OPM authorized and required the PBP Plan to print 100,000 copies of a brochure detailing its 2006 plan for distribution to potential subscribers. The PBP Plan agreed to provide OPM with a compliance plan detailing its safeguards against insolvency by December 2.

On November 28, 2005, OPM advised Plaintiff by letter of OPM's initial determination that the PBP Plan did not meet its minimum standards for health benefit carriers and informed Plaintiff that OPM intended to withdraw approval of the PBP Plan's participation in the FEHBP effective January 1, 2006. On the morning of November 29, 2005, Plaintiff received notice that OPM intended to publicize its determination by sending certified letters to all PBP Plan annuitant subscribers and issuing a press release. This publication was set to occur during the FEHBP "open season," the period during which federal employees have the ability to select the health care plan of their choice.[2]

On the afternoon of November 29, 2005, OPM advised Plaintiff that it would withhold publication for forty-eight hours. During this time, Plaintiff was directed to present credible evidence that it had protected plan members from

---

[2] Open season began on November 14, 2005, and is scheduled to end on December 12, 2005.

financial risk by arranging for payment of the PBP Plan's liabilities in the event of plan termination. In response, Medicure Plus agreed to provide an additional $2.8 million to guarantee payment of the PBP Plan's liabilities in the event of the Plan's insolvency, bringing the Plan's guarantee fund to a total of $12.8 million. Plaintiff drafted a security lien agreement to ensure that this $12.8 million would be pledged only for PBP Plan purposes.

On December 1, 2005, Plaintiff informed OPM of the additional guarantee funds and the security lien agreement, and Plaintiff requested that it be informed if OPM found the arrangements unacceptable. Plaintiff alleges that OPM agreed to not publicize its preliminary determinations regarding the PBP Plan until it had completed its review of Plaintiff's arrangements. On December 7, 2005, however, Plaintiff was informed of OPM's immediate intention to publicize its notice of intent to withdraw approval of the PBP Plan.[3] On the same day, Plaintiff filed this action seeking injunctive relief and filed

---

[3] On December 7, 2005, OPM posted a press release on its website discussing the notice of intent. Furthermore, on the morning of December 8, 2005, the *Washington Post* published an article that was based on the OPM press release and that contained an interview with Steve LeNoir, Plaintiff's president. According to the parties, however, OPM has not yet sent the planned letters to PBP Plan annuitant subscribers. Plaintiff has informed the Court that most of its subscribers live outside of the Washington, DC area and are likely unaware of the *Washington Post* article or the OPM press release. For this reason, the Court finds that the press release and the newspaper article do not moot Plaintiff's Motion.

the instant Motion seeing a temporary restraining order and preliminary injunction. This Motion is before the Court.

## II. Standard of Review

In determining whether a preliminary injunction or temporary restraining order is appropriate, a district court must apply the "balance-of-hardships" test. *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977). Under the test, a court examines the following four factors:

> (1) the likelihood of irreparable harm to the plaintiff without the injunction;
>
> (2) the likelihood of harm to the defendant with an injunction;
>
> (3) the plaintiff's likelihood of success on the merits; and
>
> (4) the public interest.

*See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture*, 550 F.2d at 193-96. No single factor can defeat a motion for a preliminary injunction or temporary restraining order. Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered." *Blackwelder Furniture*, 550 F.2d at 196.

When applying the four-factor test, the Court must first balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted." *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). The

plaintiff must demonstrate that the harm is "'neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)). Once the court finds that the harm to the plaintiff is actual and imminent, it should proceed to balance this harm against the harm that would occur to the defendant if the preliminary injunction issued. *See id.* The district court then determines the likelihood of success on the merits on a sliding scale as follows:

> If, after balancing [the likelihood of harms], the balance "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted "if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*See Manning*, 119 F.3d at 263 (quoting *Rum Creek Coal Sales*, 926 F.2d at 359).

### III. Analysis

First, Plaintiff contends that it will suffer irreparable harm if OPM is not enjoined from sending letters to PBP Plan annuitant subscribers publicizing OPM's notice of intent to withdraw approval of the PBP Plan. Plaintiff argues that because it is the FEHBP open season, publication of the notice of intent will cause the majority of PBP Health Plan subscribers to select other plans. As the PBP Plan's only business is providing

health benefits to federal employees, the publication would effectively drive the PBP Plan out of business.

The purpose of a preliminary injunction is to preserve the status quo pending an adjudication on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The Fourth Circuit has recognized that irreparable harm may exist "where the moving party's business cannot survive absent a preliminary injunction." *Hughes*, 17 F.3d at 694 (citing *Roland Mach Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).  The fact that the PBP Plan solely serves federal employees renders it more vulnerable to OPM action, a factor which also bears on the irreparability of the harm.  *See Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 527, 549 (E.D. Va. 2001).  Given this vulnerability, any publication of the OPM notice of intent may initiate a sequence of events that would result in the demise of the PBP Plan.  This sequence would begin before Plaintiff could obtain formal administrative review of OPM's preliminary decision to withdraw approval, rendering such review meaningless.  Accordingly, Plaintiff has demonstrated irreparable harm, and a preliminary injunction is necessary to preserve the status quo.

The second factor is the likelihood of harm to the defendant that would occur if an injunction issued.  OPM argues that it is appropriate and necessary for a regulatory agency taking administrative action to inform at the outset of the

6

action those individuals who stand to gain or lose the most from the proceedings.  In this case, those individuals would be the current PBP Plan subscribers.  A preliminary injunction would not, however, prevent OPM from informing the public of its intent to withdraw approval of the PBP Plan at a later date should it be successful on the merits.  If this did not occur until after the conclusion of open season, OPM has the ability to permit PBP Plan subscribers to select a new health care plan at that time.

The third consideration is Plaintiff's likelihood of success on the merits.  Plaintiff's complaint in this action seeks injunctive relief and a declaratory judgment that OPM's decision to notify PBP Plan subscribers of its notice of intent to withdraw approval violates 5 U.S.C. § 8902 and 5 C.F.R. § 890.204.  The statutory and regulatory provisions relied upon by Plaintiff provide for government employees' health insurance and state that OPM may withdraw its approval of a health benefit plan only after notice to the plan carrier and an opportunity for a hearing.  5 U.S.C. § 8902(e).  More specifically, the carrier is to be given fifteen days to reply after its receipt of OPM's notice of intent.  5 C.F.R. § 890.204(a)(1).  On receipt of the carrier's reply, or in the absence of timely reply, OPM must set a date, time, and place for a hearing.  5 C.F.R. § 890.204(a)(2). Plaintiff argues that OPM's decision to publicize its notice of intent violates these provisions.  Plaintiff claims that such

publication is tantamount to final administrative action, insofar as it will cause PBP Plan subscribers to enroll in other health care plans. Thus, the essence of Plaintiff's claim for relief is that it is deprived of its right to formal administrative review before OPM takes decisive action.

The statute and regulation relied upon by Plaintiff provide only for a right to notice and an opportunity for a hearing before the final withdrawal of approval; there is no mention of publication of a notice of intent. Furthermore, OPM has the regulatory authority and a contractual right to publicize its notice of intent. 48 C.F.R. § 1652.249-70 provides:

> After OPM notifies the Carrier of its intent to terminate the contract, OPM may take action as it deems necessary to protect the interests of members, including but not limited to -
> . . .
> (2) Advising enrollees of the asserted deficiencies.

48 C.F.R. § 1652.249-70(b)(2). The government has represented to the Court that this provision is included as a term in OPM's contracts with health care carriers, a fact that Plaintiff does not dispute. Therefore, not only do the provisions cited by Plaintiff fail to prohibit publication of a notice of intent, but OPM also has the regulatory authority and a contractual right to engage in such publication. Because of this fact, Plaintiff will be unable to prevail on the merits of its action.

Finally, Plaintiff argues that a preliminary injunction would serve the public interest by preserving a competitive

8

market of health care suppliers.  This argument is questionable, given that consumers will retain the ability to choose the PBP Health Plan during the time between publication of OPM's notice of intent and OPM's formal withdrawal of approval.  Thus, publication would likely not lessen competition.  The public interest is probably better served by allowing OPM to inform the public of its determination that the PBP Health Plan does not meet OPM's financial standards.

While the "balance of hardships" is the most important factor in determining whether to issue a preliminary injunction, *see Hughes*, 17 F.3d at 693, Plaintiff is still required to show some likelihood of success on the merits.  Here, Plaintiff has demonstrated no likelihood.  Accordingly, the Court finds that a preliminary injunction is inappropriate.

### IV.  Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for a temporary restraining order and preliminary injunction.  An appropriate Order shall issue.


December 8, 2005                   _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE